UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **TERRI FRANKS,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **CASE NO. 7:08-CV-1035-SLB** |
| ) | |
| **INDIAN RIVERS MENTAL** ) | |
| **HEALTH CENTER,** ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

The court invited the parties to file their written arguments regarding the admission of "me too" evidence and the preclusive effect of the decision of the Alabama Department of Industrial Relations [DIR] to deny Terri Franks's claim for unemployment compensation benefits – both issues raised during pretrial proceedings. Upon consideration of the record, the submissions of the parties, the arguments of counsel, and the relevant law, the court is of the opinion that plaintiff's FMLA interference and retaliation claims based on her termination are precluded and due to be dismissed based on the decision of DIR. Therefore, the court, *sua sponte*, moves to dismiss these claims. Plaintiff's "me too" evidence is not relevant to her remaining FMLA interference claim; therefore, such evidence is admissible only if the court allows plaintiff's claims based on her termination to proceed.

**A.   COLLATERAL ESTOPPEL**

Defendant, Indian Rivers Mental Health Center, contends that, based on the doctrine of collateral estoppel/issue preclusion, Franks should be barred from presenting any evidence

regarding the reason for her termination based on the final decision of DIR finding that she had been terminated for dishonest conduct. "'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443 (1970).

Indian Rivers terminated Franks on June 26, 2007. At that time, Indian Rivers's stated reason for the termination was, "Repeated failure to complete assigned objective (Treatment Plan Review Process) [and] Code of Conduct violation – No. 2; submitting claims that represent . . . services[,] all or part of which simply were not performed." (Doc. 35-1 at 34.) Thereafter, Franks filed a claim for unemployment compensation. (*See* 71-1 at 2.)

In response to her claim for unemployment compensation, DIR asked Indian Rivers to provide its "reason for separation." (*Id.*) Danielle Datcher, HR Assistant, stated that the reasons for Franks's separation were "Repeated failure to complete assigned objective [and] Code of Conduct violation – No. 2; submission of claims that represent . . . services[,] all or part of which were not performed." (*Id.*) On July 19, 2007, DIR sent Indian Rivers an Employer Notice of Determination, which stated Franks was "disqualified for receipt of benefits" pursuant to Ala. Code 25-4-78(3)(a). (Doc. 71-1 at 4.) This section provides, "An individual shall be disqualified for total or partial unemployment: . . . [i]f he was discharged

or removed from his work for a dishonest or criminal act committed in connection with his work . . . ." Ala. Code § 25-4-78(3)(a).

After the denial of her claim for benefits, Franks requested a hearing, which was granted. DIR notified the parties that the hearing was set for August 24, 2007, on the following issues:

> Section 25-4-78(2) and/or 25-4-78(3) Code of Alabama 1975: Whether the claimant left the most recent bona fide work voluntarily without good cause connected with such work or was discharged for misconduct connected with the work.

(Doc. 71-1 at 6.)[1] Despite notice, Franks did not attend the hearing. She contends she did not attend the hearing because she was "gainfully employed on the date of the hearing." (Doc. 73 at 3.)

On August 31, 2007, DIR issued its Decision on Unemployment Compensation Claim. (Doc. 71-1 at 8.) The Decision stated:

> APPEARANCES AT THE HEARING:  Employer representative (No testimony taken)
>
> ISSUES(S): Whether the claimant was discharged or removed from work for a dishonest or criminal act committed in connection with work or for sabotage or an act endangering the safety of others or for the use of illegal drugs after previous warning or for the refusal to submit to or cooperate with a blood or urine test after previous warning. Section 25-4-78(3)(a) Code of Alabama 1975.

---

[1] Subsection (2) sets forth grounds for disqualifying a claimant that has voluntarily quit and subsection (3) sets forth grounds for disqualifying a claimant based on misconduct. Ala. Code § 25-4-78(2), (3).

3

> FINDINGS: The nonappearance of the appellant and the absence of additional evidence requires the Administrative Hearing Officer to make a decision based upon the evidence contained in the file which consists of prior statements not under oath.
>
> CONCLUSIONS: Having examined and considered the evidence available and the applicable provisions of the Unemployment Compensation Law pertaining to the issue under consideration, the Administrative Hearing Officer finds no basis for any change in the Examiner's determination.
>
> DECISION: The Examiner's determination is affirmed. The claimant remains disqualified under the provisions of Section 25-4-78(3)(a) of the Law. . . .
>
> APPEAL RIGHTS: This decision becomes final unless an application for leave to appeal to the Board of Appeals is received in writing . . . on or before the FINAL DATE OF September 17, 2007.

(*Id.*) Franks did not appeal this decision.

Indian Rivers contends that the decision of DIR, finding it had discharged Franks for misconduct involving dishonesty, bars Franks from challenging the reason for her termination in this case. The Supreme Court has held:

> "When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422, 86 S. Ct. 1545, 1560, 16 L. Ed. 2d 642 (1966). Such repose is justified on the sound and obvious principle of judicial policy that a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise. To hold otherwise would, as a general matter, impose unjustifiably upon those who have already shouldered their burdens, and drain the resources of an adjudicatory system with disputes resisting resolution. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326, 99 S. Ct. 645, 649, 58 L. Ed. 2d 552 (1979). The principle holds true when a court has resolved an issue, and should do so equally when the issue has been decided by an administrative agency, be it state or federal, *see University of Tennessee v.*

> *Elliott*, 478 U.S. 788, 798, 106 S. Ct. 3220, 3225-26, 92 L. Ed. 2d 635 (1986), which acts in a judicial capacity.

*Astoria Federal Sav. and Loan Ass'n v. Solimino* 501 U.S. 104, 107-08 (1991). "[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the State's courts." *Elliott*, 478 U.S. at 799.

Although the Eleventh Circuit has not addressed the issue, this court has held that Congress did not intend to "push aside" federal preclusion law as to FMLA claims:

> The FMLA contains no provisions dealing with prior state administrative action, however, and there is no indication of a Congressional intent to abrogate the doctrine of collateral estoppel for state administrative decisions. *See* 29 U.S.C. §§ 2601-2654. *See also Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 729 (2d Cir. 2001). Therefore, Congress has not abrogated the federal common-law doctrine of collateral estoppel for FMLA claims. Stated differently, a plaintiff's FMLA claim may be collaterally estopped by the findings of a state administrative agency. *See Brockman v. Wyoming Department of Family Services*, 342 F.3d 1159, 1165-67 (10th Cir. 2003); *Kosakow*, 274 F.3d at 728-29; *Bailey v. Miltope Corp.*, 513 F. Supp. 2d 1232, 1237 (M.D. Ala. 2007).

*Petty v. United Plating, Inc.*, Civil Action No. CV-09-S-1465-NE, 2012 WL 2047532, *10-*11 (N.D. Ala. May 31, 2012)(Smith, J.).

Plaintiff does not argue that Congress intended the FMLA to override federal preclusion law. Therefore, the court finds that an unreviewed agency decision can be given collateral estoppel effect in a FMLA suit brought in a district court in Alabama if Alabama state courts would give the decision preclusive effect.

5

The Alabama Supreme Court has held:

In order for the doctrine of collateral estoppel to apply to an issue raised in an administrative proceeding, the following elements must be present:

(1) there is identity of the parties or their privies; (2) there is identity of issues; (3) the parties had an adequate opportunity to litigate the issues in the administrative proceeding; (4) the issues to be estopped were actually litigated and determined in the administrative proceeding; and (5) the findings on the issues to be estopped were necessary to the administrative decision.

*Ex parte Buffalo Rock Co.* 941 So. 2d 273, 277 (Ala. 2006)(quoting *Wal-Mart Stores, Inc. v. Smitherman,* 743 So. 2d 442, 445 (Ala. 1999)(quoting *Ex parte Smith*, 683 So. 2d 431, 433 (Ala. 1996)(quoting *Ex parte Shelby Med. Ctr., Inc.*, 564 So. 2d 63, 68 (Ala. 1990))))(internal quotations omitted). Consideration of these factors leads the court to the conclusion that collateral estoppel bars reconsideration of the reason for Franks's termination.

### 1. Identity of the parties

"Plaintiff concedes that the proceedings before DIR involved the same parties as are involved in this case." (Doc. 73 at 7.) Therefore, the court finds that this element is satisfied.

### 2. Identity of issues

Franks contends that the evidence submitted by Indian Rivers does not clearly identify the issue before DIR and that DIR's identification of the issue changed over time. (*Id.* at 7-8.) The court disagrees.

The issue before DIR was "the reason for plaintiff's termination." *See Petty*, 2012 WL 2047532 at *12. *See generally* doc. 71-1. This issue is the same for Franks's FMLA claims based on her termination. *See Petty*, 2012 WL 2047532 at *12. Therefore, the court finds that this element is satisfied.

Franks contends that DIR disqualified Franks based on Ala. Code § 25-4-78(3)(a) "despite the fact that Defendant's reason for separation makes no reference to dishonest or criminal acts, sabotage, acts endangering the safety of others, or the use of illegal drugs." (Doc. 73 at 8.) This code section provides a claimant is disqualified if he or she is "discharged for misconduct," which is defined as the following:

- "a dishonest or criminal act committed in connection with his work"
- "sabotage"
- "an act endangering the safety of others"
- "the use of illegal drugs after previous warning"
- "the refusal to submit to or cooperate with a blood or urine test after previous warning.

Ala. Code § 25-4-78(3)(a). One of the reasons Indian Rivers gave for terminating Franks, as articulated in its response to her claim for unemployment compensation, was the fact that she had submitted claims for services that were not performed. (Doc. 71-1 at 2.) Such behavior constitutes a dishonest act and disqualifies Franks pursuant to Ala. Code § 24-4-78(c)(a).

Also, the court finds the identification of the issues for the hearing as including both whether Franks voluntarily left Indian Rivers, Ala. Code § 25-4-78(2), and whether she was discharged for misconduct, Ala. Code § 25-4-78(3), does not prove the issue before DIR and

the issue now before this court are different. The records submitted by Indian Rivers clearly show that DIR disqualified Franks based on the fact that she was terminated for misconduct involving dishonesty. (Doc. 71-1 at 4, 8.) The issue decided by DIR – the reason for Franks's termination – is identical to the issue before the court on Franks's termination claims.

### 3. Adequate opportunity to litigate the issue

"A full and fair opportunity to litigate is the touchstone of any preclusion analysis. *Taylor v. Sturgell*, 553 U.S. 880, 892, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008). The 'desire not to deprive a litigant of an adequate day in court' is balanced against the 'desire to prevent repetitious litigation of what is essentially the same dispute.' *In re Freeman*, 30 F.3d 1459, 1465 (Fed. Cir. 1994)." *Aspex Eyewear, Inc. v. Zenni Optical Inc.*, 713 F.3d 1377, 1382 (Fed. Cir. 2013). With regard to whether a claimant had an "adequate opportunity" to challenge the reason for her termination, this court has held:

> In *Smitherman*, the Alabama Supreme Court held that Alabama's Unemployment Compensation Act affords parties an adequate opportunity to litigate the issue of discharge in an unemployment compensation claim hearing. *See Smitherman*, 743 So. 2d at 446. The court provided the following reasoning in support of that holding:
>
>> The Unemployment Compensation Act requires that the appeals tribunal "afford[ ] the parties reasonable opportunity for [a] fair hearing." Ala. Code 1975, § 25-4-93. The procedure for conducting the hearing is prescribed by regulations of the Department of Industrial Relations. *See* [Ala. Code] § 25-4-92(b); *see generally* Ala. Admin. Code r.4. 480-1-4-.04 to -.06. Those regulations provide for a hearing at which the parties are afforded the opportunity to present evidence and testimony of witnesses given under oath. *See* Ala. Admin Code r.

> 480-1-4-.04.  A party may be represented by an attorney.  *See* [Ala. Admin Code] r. 480-1-4-.05.  The parties are also afforded the opportunity to request that the hearing officer issue subpoenas to compel the attendance of witnesses or the production of documents or other things.  *See* [Ala. Admin Code] r. 480-1-4-.06.

*Id.* (first two alterations in original).

> The record in this case shows that a hearing was held at which both parties were present with their representatives.  Also, the Administrative Hearing Officer made findings of fact based on the testimony and other evidence presented to her at that hearing.
>
> While there is no evidence of record that plaintiff asserted before the Department of Industrial Relations that his termination was related to his FMLA leave, that does not mean that he did not have ***the opportunity*** to assert that argument.  In order to receive unemployment benefits, plaintiff had the burden to show that he was not discharged for the misconduct of leaving work without clocking-out as defendant asserted.  *See Smitherman*, 743 So. 2d at 447.  Thus, he had the burden of refuting defendant's asserted reason for his discharge.  *See id*.  If plaintiff believed that defendant discharged him because he took FMLA leave, then he had the burden to so prove.  *See id*.
>
> . . .
>
> Furthermore, and contrary to plaintiff's assertions, claimants do have the ability to assert before the Department of Industrial Relations that they were terminated for a reason other than the reason asserted by their former employer.  *See Smitherman*, 743 So. 2d at 445-46.  Plaintiff has not directed this court to, nor has this court independently found, any authority providing that the Department of Industrial Relations may not consider a former employee's protected activities under the FMLA as the reason for his or her termination.

*Petty*, 2012 WL 2047532 at *12-*14 (emphasis in original).

Franks argues, "Absent evidence that Franks was told exactly what Defendant was arguing before the DIR, and was given an opportunity to challenge those reasons, it cannot

9

be said that Franks had a full and fair opportunity to argue her version of the facts." (Doc. 73 at 10.) The evidence in this case shows the reasons Indian Rivers gave Franks for her termination on June 27, 2007, were the same reasons it gave to DIR. (*Compare* doc. 35-1 at 34 with doc. 71-1 at 2.) Franks cannot establish that she did know the reasons given by Indian Rivers for her termination. Moreover, the fact that Franks did not appear at the hearing or appeal the decision in no way indicates that she did not have the *opportunity* to litigate fully the reason for her termination before DIR.

The court finds that Franks had an adequate opportunity to litigate the reason for her termination before DIR in support of her claim for unemployment compensation.

### 4. Issue actually litigated and determined

Franks contends that the issue of the reason for her termination was not actually litigated and determined against her by DIR because she did not have adequate notice of the hearing, she did not have copies of Indian Rivers's documents, no testimony was taken at the hearing, she did appear at the hearing, and she was not represented by an attorney. These arguments miss the mark.

The record shows that Franks filed a claim for unemployment compensation. By filing such a claim, she asserted a legal right to benefits under Alabama law. Indian Rivers opposed her claim; thus, the issue of her qualification for unemployment compensation based on her discharge for alleged misconduct was squarely before DIR. A DIR Examiner determined that Franks was disqualified pursuant to Ala. Code § 25-4-78(3)(a). In response

to Franks's request, DIR held a hearing on her claim for unemployment compensation, which Franks chose not to attend. Because no testimony or new evidence was presented, the DIR Hearing Officer reviewed the record evidence, which consisted of statements from Franks and Indian Rivers, before determining that Franks was disqualified pursuant to Ala. Code § 25-4-78(3)(a). Franks did not appeal.

In order to disqualify Franks pursuant to § 25-4-78(3)(a), DIR had to determine, as a matter of fact, that Indian Rivers had terminated her for dishonesty. Franks requested the opportunity to present testimony to DIR to rebut Indian Rivers's articulated reason for her termination. Despite being granted the hearing she had requested and for reasons unrelated to anything said or done by DIR and/or Indian Rivers, Franks elected not to appear at the hearing. Nevertheless, because she had been granted review of the Examiner's decision, the issue of the reasons for her termination was considered and determined by the DIR Hearing Officer. The fact that Franks did not pursue her claim after she found other work does not establish that DIR did not provide the adversarial forum for her claim or that it did not actually decide that she was terminated for misconduct based upon the evidence before it.

Franks contends that her abandonment of her unemployment compensation claim is the equivalent of a default judgment against her and a default judgment in Alabama does not have preclusive effect. Franks did not withdraw her claim and her claim was not decided based solely on her failure to appear. The proceedings from DIR clearly indicate that the Examiner and the Hearing Officer determined the merits of Franks's claim for benefits based

11

on the record evidence. Therefore, the decision, although based on limited evidence, is a decision of the merits – not a decision by default.

Under the circumstances, the court finds that the issue of the reason for Franks's termination was actually litigated and decided by DIR.

### 5. Issue necessary to DIR's decision

Franks argues that because DIR did not specify the grounds for her disqualification under Ala. Code § 25-4-78(3)(a), the reason for her termination was not necessary to DIR's decision.

DIR determined that Franks was disqualified pursuant to Ala. Code § 25-4-78(3)(a). This code section provides a claimant is disqualified if he or she is "discharged for misconduct," which includes (1) "a dishonest or criminal act committed in connection with his work," (2) "sabotage," (3) "an act endangering the safety of others," (4) "the use of illegal drugs after previous warning," and (5) "the refusal to submit to or cooperate with a blood or urine test after previous warning." Ala. Code § 25-4-78(3)(a). According to her termination notice and Indian Rivers's response to her unemployment compensation claim, Indian Rivers terminated Franks for submitting clams for services that were not performed. This conduct is clearly a dishonest act connected to her work. *See id*. Because Indian Rivers has never asserted that Franks was discharged for any other type of misconduct described in § 25-4-78(3)(a), DIR could only have found that Indian Rivers terminated Franks for submitting false claims.

This issue – why Indian Rivers terminated Franks – was necessary to DIR's decision to deny her claim for unemployment benefits. Therefore, the court finds this element of Alabama's test for collateral estoppel is satisfied.

Based on the foregoing, this court finds that Alabama courts would give preclusive effect to DIR's decision, and, therefore, Franks is barred from relitigating the reason for her termination. Also, assuming that Franks was terminated for submitting false claims for services, and not because of her FMLA leave, her FMLA claims based on her termination are due to be dismissed.

### The Court's Sua Sponte Motion for Summary Judgment

The court notes that defendant did not raise the issue of collateral estoppel in its Motion for Summary Judgment, (*see generally* doc. 35), and the deadline for filing a dispositive motions has long since passed, (*see* doc. 29 at 4). Nevertheless, "By precluding parties from contesting matters that they have had a full and fair opportunity to litigate, [the doctrine of collateral estoppel] protect[s] against the expense and vexation attending multiple lawsuits, conserve[s] judicial resources, and foster[s] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)(quoting *Montana v. United States*, 440 U.S. 147, 153-54 (1979))(internal quotations omitted). Therefore, the court, for the reasons set forth above, moves, *sua sponte*, for

dismissal of plaintiff's FMLA claims based on the decision of DIR that she was terminated for submitting false claims.

"A district court possesses the power to enter summary judgment *sua sponte* provided the losing party 'was on notice that she had to come forward with all of her evidence.'" *Burton v. City of Belle Glade*, 178 F.3d 1175, 1203 (11th Cir. 1999)(quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Pursuant to Rule 56(f), the court may grant a *sua sponte* motion for summary judgment "after identifying for the parties material facts that may not be genuinely in dispute," and giving the opponent at least ten days notice and time to respond. Fed. R. Civ. P. 56(f)(3); *see also Burton*, 178 F.3d 1175, 1203-04.

Therefore, this court will entered an Order contemporaneous with this Memorandum Opinion, giving plaintiff notice of its intent to dismiss her termination claims and an opportunity to respond.

### B. "ME TOO" EVIDENCE

"Although generally inadmissible, evidence of extrinsic misconduct will be admitted under certain exceptions contained in Fed. R. Evid. 404(b)." *United States v. Williford*, 764 F.2d 1493, 1497 (11th Cir. 1985). "The test for admissibility of extrinsic act evidence is whether the evidence is relevant to an issue other than defendant's character and whether its probative value is outweighed by its prejudicial effect." *Id*. The Eleventh Circuit has "approved the use of 'me too' evidence under F.R.E. 404(b) in discrimination and retaliation

cases." *Demers v. Adams Homes*, 321 Fed. Appx. 847, 854 (11th Cir. 2009)(citing *Goldsmith v. Bagby Elevator*, 513 F.3d 1261, 1285 (11th Cir. 2008)).

"Under F.R.E. 404(b), '[e]vidence of other crimes, wrongs, or acts . . . may . . . be admissible for . . . purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Id*. at 853 (quoting Fed. R. Evid. 404(b)). "The Supreme Court has held that the admissibility of an employer's alleged discriminatory acts not directed specifically at the plaintiff is fact based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and the theory of the case. Because Rules 401 and 403 do not make such evidence per se admissible or per se inadmissible, the district court has wide discretion concerning the admission of such evidence." *Blue v. Dunn Construction*, Case 2:09-CV-00864-WMA, doc. 39 at 10 (N.D. Ala. Aug. 16, 2010)(quoting *Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 388 (2008))(internal citations and quotations omitted).

Franks intends to offer the following so-called "me-too" evidence in support of her claims:

> 14. Franks will testify, consistent with her affidavit (Doc. 39-1), that Rita Harless, Defendant's Human Resources Director, told her that Defendant's sick leave occurrence policy was not used on everyone. Rather, it was "discretionary, when you have a problem employee and want to build a case to terminate them." (Doc. 39-1, para. 11.)
>
> 15. Franks will testify that Robbins followed this philosophy as well. Lisa Geist, an employee supervised by Franks, had previously been approved for intermittent FMLA leave due to a surgery. Robbins told Franks that every

15

time Geist requested medical leave, she was to write her up for an occurrence for using her sick time, so that they could build a case to terminate her.

      16. During management meetings in 2006, Robbins discussed how to get rid of employees who were on or requested FMLA leave. Robbins termed these individuals "problem employees." Individuals who Robbins identified as "problem employees" because of their use of FMLA leave included Catherine Hedgemon, Christian Nicholson, Audra Hudson, Barbara Lowery, Minnie Rainey, and Jackie May.

      17. Barbara Lowery explained how she was treated by Defendant when she sought FMLA leave. (Doc. 39-3.) On March 6, 2006, Lowery advised her supervisor, Robbins, that she needed to have surgery in mid-April, 2006. She obtained and processed the appropriate paperwork through Human Resources, giving Defendant the required thirty day written notice in advance of her leave. On the Monday before her leave to was begin, Lowery reminded her new supervisor, Susan Copeland, of her pending leave. Copeland was not aware of her leave and sent [Lowery] to meet with Harless. Despite the fact that Lowery had submitted her paperwork as required by Defendant's policy, Harless took disciplinary action against Lowery for "failure to give thirty (30) days notice of FMLA leave." As a result of this disciplinary action, Lowery was forced to reapply for FMLA leave and reschedule her surgery.

      18. Aundra Hudson states, in her EEOC charge affidavit, that she was written up by Lawless for using excessive sick leave, despite the fact that most of her sick time was covered by her approved interim FMLA leave.

      19. Defendant's business records establish that Bernice Kirkland turned her FMLA paperwork in on October 7, 2008, and was terminated December 11, 2008. PX27. Jackie May was terminated less than two months after being approved for intermittent FMLA leave. In fact, Robbins treated adversely all employees who needed FMLA leave and referred to them as "problem employees."

      20. Evidence as to how Robbins, Lawless, and Defendant treated employees who asserted their FMLA rights is admissible under both Federal Rule of Evidence 404(b) and 402.

(Doc. 70 at 4-7.)

If the court dismisses plaintiff's termination claims as it proposes, her proffered "me-too" evidence would not be relevant to the remaining FMLA interference claim. Therefore, the evidence set forth above will be excluded unless the termination claims proceed to trial.[2]

## CONCLUSION

For the foregoing reasons, the court is of the opinion that there are no material facts in dispute and defendant is entitled to judgment as a matter of law on plaintiff's termination claims. An Order giving plaintiff notice of the court's intent to dismiss her termination claims and giving her a chance to respond will be entered contemporaneously with this Memorandum Opinion.

**DONE**, this 7th day of February, 2014.

*Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
UNITED STATES DISTRICT JUDGE

---

[2] If the termination claims proceed to trial, the court will enter an opinion setting forth its views on the admissibility of the proffered "me too" evidence on plaintiff's termination claims.